2005-NMCA-016

107 P.3d 1

In the Matter of the Estate of
John Salopek, Deceased.

Dacia E. SALOPEK, Petitioner–
Appellant,

v.

Elizabeth HOFFMAN, Jim Salopek, Jack
Salopek, Patricia Kinney, Stephen Salo-
pek, Christine Brown, and Margaret
Walth, Contestants–Appellees.

No. 24018.

Court of Appeals of New Mexico.

Nov. 23, 2004.

Certiorari Denied, No. 29,015, Feb. 1, 2005.

**48**

Joleen K. Youngers, Almanzar & Youngers, P.A., Joseph M. Holmes, Joseph M. Holmes, P.A., Las Cruces, for Appellant.

Kevin J. Hanratty, Hanratty Law Firm, Artesia, Patrick L. Westerfield, Westerfield Law Offices, Ltd., for Appellees.

## OPINION

BUSTAMANTE, J.

{1} This interlocutory appeal presents two issues: (1) whether the waiver of rights provision of the Uniform Probate Code, NMSA 1978, § 45–2–407 (1995), which became effective July 1, 1995, can be applied retroactively to a post-nuptial agreement entered into by the parties in 1980; and (2) whether language in the post-nuptial agreement waives the family allowance, NMSA 1978, § 45–2–402 (1995), and the personal property allowance, NMSA 1978, § 45–2–403 (1999). We hold that the statutory waiver provision does not apply retroactively. We further hold that the post-nuptial agreement was not a common law contractual waiver. We therefore reverse and remand to the district court.

## BACKGROUND

{2} This interlocutory appeal is brought by Dacia E. Salopek (Wife), the surviving spouse of the decedent, John Salopek. Wife and decedent were married twice, the most recent time being from April 24, 1980, until the decedent's death on April 15, 2002. Wife and decedent entered into a "Post–Nuptial Agreement" on June 30, 1980. Following the appointment of a special administrator for the estate, Wife filed a claim against the estate for the statutory family and personal property allowances. The special administrator neither allowed nor disallowed the claims. Wife filed her Petition for Allowance of Claims for Personal Property Allowance and for Family Allowance with the district court, and requested a hearing. Decedent's children filed an objection to the claims, arguing that the claims had been waived by the post-nuptial agreement entered into by Wife and decedent.

{3} The district court conducted a hearing and denied the petitions for the allowances. In so ruling, the district court relied on language in the post-nuptial agreement that provides the agreement "relates to any real or personal property now owned or hereinafter acquired," and that the agreement is "binding on personal representatives." The district court applied the current waiver provision, Section 45–2–407(D), enacted in 1995, and ruled that the language in the post-nuptial agreement met the definition of waiver as defined by the statute.

## DISCUSSION

{4} We review issues of statutory interpretation de novo. *Bd. of Comm'rs of Doña Ana County v. Las Cruces Sun–News*, 2003–NMCA–102, ¶ 19, 134 N.M. 283, 76 P.3d 36. Our goal is to ascertain legislative intent, which is primarily indicated by the plain language of the statute. *Id.*

{5} Wife first argues that Section 45–2–407, the waiver of rights provision, cannot be applied retroactively to the 1980 post-nuptial agreement. Wife relies on New Mexico rules of statutory construction which state that statutes, except those dealing with remedial procedures, are presumed to operate prospectively unless there is clear legislative intent to give the statute retroactive effect. *Coleman v. United Eng'rs & Constructors, Inc.*, 118 N.M. 47, 52, 878 P.2d 996, 1001 (1994) (holding that ten-year statute of repose did not operate retroactively in precluding worker's personal injury action against corporation); *Quintana v. Los Alamos Med. Ctr., Inc.*, 119 N.M. 312, 314, 889 P.2d 1234, 1236 (Ct.App.1994). When a law affects a vested or substantive right it should have prospective application only. *Swink v. Fingado*, 115 N.M. 275, 279, 290, 850 P.2d 978, 982, 993 (1993).

{6} Wife points out that when the waiver of rights provision was enacted in 1995, the language of the allowance provisions was

changed so that the waiver and allowance provisions could be read together. Prior to 1995, the family and personal property allowances could be repudiated by the decedent only through a testamentary instrument. After the 1995 changes, the allowances could be renounced or repudiated through a will "or other governing instrument." §§ 45–2–402 and –403. The addition of this language indicates an intent to have the allowance provisions read together with the waiver provisions. The "other governing instrument" language presumably allows a decedent and a surviving spouse to waive the allowances by means of instruments such as the post-nuptial agreement at issue here. This change in language is an indication that the legislature intended the provision to apply prospectively because the language in effect in 1980 did not provide for waiver by a decedent other than through a testamentary instrument. Wife also points out that when New Mexico adopted the Uniform Probate Code in 1975, the legislature did not adopt the waiver provision. Wife contends that this is another indication that the 1995 waiver provision was not intended to apply retroactively.

{7} This Court has declined to apply other provisions of the Probate Code retroactively. *In re Estate of Kerr*, 1996–NMCA–063, ¶ 8, 121 N.M. 854, 918 P.2d 1354. In *Kerr*, we ruled that in determining whether mutual wills existed, the wills did not need to meet the Probate Code requirement for mutuality because the wills were drafted three years before the Probate Code came into effect. *Id.* That is similar to the situation in this case, where the waiver provisions in question were not in effect until fifteen years after the post-nuptial agreement was signed.

■ {8} Respondents also argue that Wife "knew or should have known as a reasonable college student that she was waiving all rights to decedent[']s property by the contractual language [in the agreement]." Respondents rely on the language in paragraphs two and six of the post-nuptial agreement, which state:

2. The wife hereby agrees that she will make no claim to any of the real or personal property now owned or hereafter acquired by the husband, who may take title to any property hereafter acquired as his separate estate, nor will the wife make any claim that community property funds have been used to improve the separate property of the husband. The wife further recognizes and agrees that the husband will be required to execute mortgages on the real property which he owns or security agreements on the personal property which he owns in order to acquire operating funds, and the wife by the terms of this agreement represents that she will make no claim to any of the property, real or personal, now mortgaged or hereafter mortgaged by the husband to any lending institution. The wife further agrees that she will make no claim that any income received by the husband from crops grown on the husband's farm, including any farms that may be operated in a partnership, and that such income shall not be considered as community income, notwithstanding that the husband may have labored in earning such income, it being specifically agreed that the same shall constitute separate income of the husband.

. . . .

6. This agreement shall inure to and be binding on the parties, their heirs, and estate personal representatives.

Respondent's argument that this language constitutes a common law contractual waiver of the allowances fails as a matter of law.

■ {9} Common law waiver is an "intentional relinquishment or abandonment of a known right." *J.R. Hale Contracting Co. v. United N.M. Bank*, 110 N.M. 712, 716, 799 P.2d 581, 585 (1990). Respondents do not explain how Wife could have waived her right to allowances that she testified she did not even know existed at the time of the purported waiver. Furthermore, there is no language anywhere in the post-nuptial agreement indicating an intent to waive the statutory allowances. The terms "waiver" or "allowances" do not appear anywhere in the agreement. The post-nuptial agreement states that "the parties desire by this agreement to establish the property rights which shall exist between the parties during their marriage." The agreement further states that "[s]hould either party commence an ac-

tion for divorce or other proceedings affecting the parties' marital rights, then they each agree that this Post–Nuptial Agreement shall be filed in such proceedings." The language of the agreement does not make any reference to the statutory allowances or include mention of any claims Wife might make against the decedent's estate after his death. In sum, the language of the agreement standing by itself cannot meet the common law requirement for a waiver of the statutory allowance.

■ {10} Our decision is bolstered by the strong public policy underlying the statutory allowance. This Court had occasion to review the intent and policy behind the statutory allowances in *In re Estate of Jewell,* 2001–NMCA–008, 130 N.M. 93, 18 P.3d 334. We held that the family allowance and personal property allowance are not subject to offset or defenses and pass outside the will by operation of law. *Id.* ¶ 9. We found that in adopting the Probate Code, "our legislature supplanted the flexibility of discretionary relief in favor of the certainty of a fixed allowance which is afforded without conditions, in a set amount, and apparently without regard for the size or composition of the estate." *Id.* ¶ 15. The clear policy behind the statutory allowances is to provide a minimum guarantee to the surviving spouse that is insulated from decedent's intent so that a surviving spouse is not left penniless and abandoned. *Id.* ¶ 9. The allowances constitute a statutory entitlement even if it means recovery must be made from a decedent's sole and separate property. *Id.* The policy behind the allowances argues against finding a waiver in the absence of clear explicit language. The terms of this post-nuptial agreement are simply too general and too ambiguous to support a finding of waiver.

## CONCLUSION

{11} Consistent with our rules of statutory construction and existing case law in New Mexico, as well as the strong public policy in favor of awarding the allowances, we hold that the 1995 waiver of rights statute cannot be applied retroactively. And, the post-nuptial agreement does not qualify as a common law contractual waiver. We reverse the deci-sion of the district court and remand for further proceedings consistent with this opinion.

{12} **IT IS SO ORDERED.**

FRY and CASTILLO, JJ., concur.